**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
ANNMARIE GENTILE             :     Civ. No. 3:19CV01479(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,              :
COMMISSIONER,                :
SOCIAL SECURITY              :
ADMINISTRATION               :     September 28, 2020
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Annmarie Gentile ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff moves to reverse the Commissioner's decision, or in the alternative, to remand for a new hearing. [Doc. #15]. Defendant moves for an order affirming the Commissioner's decision. [Doc. #24].

For the reasons set forth below, plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing [**Doc. #15**] is **DENIED,** and defendant's Motion for an Order Affirming the Commissioner's Decision [**Doc. #24**] is **GRANTED.**

1

## I.   <u>PROCEDURAL HISTORY</u>[1]

Plaintiff filed an application for DIB on March 30, 2016, and an application for SSI on April 8, 2016, alleging disability beginning on September 1, 2015. <u>See</u> Certified Transcript of the Administrative Record, Doc. #13, compiled on November 19, 2019, (hereinafter "Tr.") at 246-56. Plaintiff's applications were denied initially on August 9, 2016, <u>see</u> Tr. 136-46, and upon reconsideration on February 6, 2017. <u>See</u> Tr. 150-58.

On August 7, 2018, plaintiff, represented by Attorney Mark Wawer, appeared and testified at a hearing before Administrative Law Judge ("ALJ") John Aletta. <u>See generally</u> Tr. 33-86. Vocational Expert ("VE") Courtney Olds appeared and testified in person at the hearing. <u>See</u> Tr. 73-84. During the administrative hearing, plaintiff, through her counsel, amended her alleged onset date to March 29, 2016. <u>See</u> Tr. 36.

---

[1] Simultaneously with her motion, plaintiff filed a medical chronology, which the Court construes as plaintiff's Statement of Material Facts. [Doc. #15-2]. The Standing Order requires that "within 60 days after Plaintiff files the Statement of Material Facts, Defendant shall file a responsive statement of facts that corresponds to Plaintiff's Statement of Material Facts and indicate if the Defendant adopts the contents of each paragraph as presented." Doc. #5 at 3. Defendant did not file a responsive statement, and instead incorporated a "Statement of Facts" into his supporting memorandum. Doc. #24-1 at 2-10. In the future, defendant is cautioned that he must comply with the Court's Standing Order, or the Court will summarily adopt plaintiff's Statement of Material Facts.

On August 28, 2018, the ALJ issued an unfavorable decision. See Tr. 7-27. On July 27, 2019, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's August 28, 2018, decision the final decision of the Commissioner. See Tr. 1-6. The case is now ripe for review under 42 U.S.C. §405(g).

## II.   <u>STANDARD OF REVIEW</u>

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d

33, 70 (S.D.N.Y. 2012) ("The Court first reviews the
Commissioner's decision for compliance with the correct legal
standards; only then does it determine whether the
Commissioner's conclusions were supported by substantial
evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d
Cir. 1999)). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have her disability determination made
according to the correct legal principles." Johnson v. Bowen,
817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]
to decide whether the determination is supported by substantial
evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)
(alterations added) (citing Treadwell v. Schweiker, 698 F.2d
137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject
the testimony of any witness, but a "finding that the witness is
not credible must nevertheless be set forth with sufficient
specificity to permit intelligible plenary review of the
record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-
61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human
Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a

finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision**." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).

Finally, some of the Regulations cited in this decision were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No.

3:15CV01723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Comm'r, No. 17CV04524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)). When a regulation that has changed is cited herein, the Court cites the version in effect at the time plaintiff's application was filed.

### III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of

proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

IV.  **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from March 29, 2016 through the date of the" ALJ's decision, August 28, 2018. Tr. 20.

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since March 29, 2016, the amended alleged onset date of her disability[.]" Tr. 13.

At step two, the ALJ found that plaintiff had the severe impairment of "depressive disorder[.]" Id. The ALJ found that plaintiff's anxiety disorder was not a medically determinable impairment. See id.

At step three, the ALJ determined that plaintiff's depressive disorder did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 13-14 The ALJ specifically found that plaintiff's depressive disorder did not meet or medically equal Listing 12.04 (Depressive, Bipolar, and Related Disorders). See Tr. 13. The ALJ also determined that plaintiff's depressive disorder did not satisfy the "Paragraph B" criteria. Tr. 13-14. The ALJ next found that plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: She could perform simple routine tasks, but not at a strict production rate pace, and could recall and execute simple routine instructions. She could make simple work-

related decisions and could occasionally interact with
the public and co-workers, but cannot perform tasks
requiring close collaboration with co-workers or
supervisors.

Tr. 15.

At step four, the ALJ concluded that plaintiff was unable
to perform any past relevant work. See Tr. 18-19. At step five,
after considering plaintiff's "age, education, work experience,
and" RFC, the ALJ found that plaintiff "is capable of making a
successful adjustment to other work that exists in significant
numbers in the national economy." Tr. 19-20.

## V.   DISCUSSION

Plaintiff asserts that the ALJ: (1) failed to develop the
record; (2) failed to rely on any opinion evidence when
formulating the RFC determination; and (3) failed to include
certain limitations in the RFC determination. See generally Doc.
#21 at 6-13. For the reasons that follow, the Court affirms the
decision of the Commissioner.

### A.   Failure to Develop the Record

Plaintiff contends that the ALJ failed to develop the
record in three respects: first, by failing to obtain session
notes from plaintiff's therapist, Sonia Mesquita, LMSW; second,
by failing to obtain treatment notes from plaintiff's anger
management therapy sessions; and, third, by failing to obtain
certain records from St. Mary's Hospital relating to an

overnight stay in 2015. <u>See</u> Doc. #21 at 6-7. Defendant responds that "the Agency is not allowed to demand" session notes from a mental health provider, and that it does not appear that plaintiff stayed overnight at St. Mary's hospital in 2015. Doc. #24-1 at 14.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." <u>Perez v. Chater</u>, 77 F.3d 41, 47 (2d Cir. 1996); <u>see also</u> <u>Swiantek v. Comm'r of Soc. Sec.</u>, 588 F. App'x 82, 84 (2d Cir. 2015). An ALJ's obligation to develop the record is "enhanced when the disability in question is a psychiatric impairment." <u>Lacava v. Astrue</u>, No. 11CV07727(WHP)(SN), 2012 WL 6621731, at *11 (S.D.N.Y. Nov. 27, 2012). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation and quotation marks omitted). Accordingly, the duty to develop the administrative record is triggered "only if the evidence before [the ALJ] is inadequate to determine whether the plaintiff is disabled." <u>Walsh v. Colvin</u>, No. 3:13CV00687(JAM), 2016 WL 1626817, at *2 (D. Conn. Apr. 25, 2016) (citation and quotation marks omitted).

"When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant. The plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record[.]" Santiago v. Astrue, No. 3:10CV00937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (internal citation omitted); see also Lena v. Astrue, No. 3:10CV00893(SRU), 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012) ("To demonstrate prejudice [plaintiff] must show that the additional medical reports would undermine the ALJ's decision." (citation and quotation marks omitted)). Accordingly, plaintiff bears the burden of showing such harmful error. See Santiago, 2011 WL 4460206, at *2.

   1.  *Session Notes from Sonia Mesquita*

Plaintiff contends that the ALJ erred by failing to obtain session notes from plaintiff's therapist, Sonia Mesquita.[2] See Doc. #21 at 6. Plaintiff contends that those session notes are significant because without them, the ALJ lacked "a full picture of [plaintiff's] mental status during the duration of the relevant period" and as a result, the ALJ assigned "reduced weight" to the medical opinions of record. Id. Defendant responds that the ALJ satisfied his obligation to develop the

_____

[2] Ms. Mesquita is a social worker at the Family Intervention Center. See Tr. 545.

record by "request[ing] records from the Family Intervention Center" which constitute "the bulk of the administrative record." Doc. #24-1 at 14. Defendant further contends that any missing session notes from the Family Intervention Center, where plaintiff's therapy sessions with Ms. Mesquita were held, are not within its authority to demand from a mental health provider, pursuant to the Health Insurance Portability and Accountability Act ("HIPAA").[3] See id.

Although plaintiff contends that her therapy sessions with Ms. Mesquita occurred far more often than her medication management sessions, she fails to explain how Ms. Mesquita's session notes would differ from what is already in the record. The record contains about two years of treatment notes from plaintiff's medication management sessions at the Family

---

[3] The Court does not reach whether the ALJ was prohibited by HIPAA from requesting Ms. Mesquita's session notes given the conclusion, infra, that such notes are not significant. Nevertheless, it bears noting that HIPAA excludes the following from its protection: "medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of ... diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date." Fact Sheet for Mental Health Care Professionals, Social Security Administration, https://www.ssa.gov/disability/professionals/ mentalhealthproffacts.htm (last visited August 5, 2020). Thus, even if HIPAA protects Ms. Mesquita's session notes, the ALJ likely could have obtained redacted versions. See, e.g., Marrero v. Comm'r of Soc. Sec., No. 19CV01369(AMD), 2020 WL 3868709, at *2 n.1 (E.D.N.Y. July 9, 2020) ("Even if [the] records were 'psychotherapy notes,' the ALJ could still obtain redacted versions.").

Intervention Center, where Ms. Mesquita treated plaintiff. <u>See</u> Tr. 413-16, Tr. 486-94, Tr. 498-516, Tr. 552-54. Plaintiff fails to explain how Ms. Mesquita's session notes would differ from other treatment notes in the record, other than the vague assertion that such notes would provide a more complete picture of plaintiff's mental health.[4] For example, the Mental Residual Functional Capacity Questionnaire (hereinafter the "MRFCQ") completed by Ms. Mesquita states: "Client has been able to cope with her depression and anxiety with the help of medication and regular therapy." Tr. 539. Medication management records from the Family Intervention Center reflect similar findings. <u>See, e.g.</u>, Tr. 498 ("doing well; reports increased mood; brighter" (sic)); Tr. 502 ("not depressed; minimal anxiety – uses prn Ativan 2-3x/month with effect" (sic)); Tr. 513 ("client reports doing well ... denies depression" (sic)); Tr. 515 ("Client ... denies depression; complains of intermittent anxiety ... reports one panic attack but was able to manage symptoms with cognitive and behavioral strategies[.]").

---

[4] The record also contains individual therapy records from plaintiff's treatment at Family Services of Greater Waterbury. <u>See</u> Tr. 417-54. Although these records pre-date the relevant time period, they reflect similar findings as those in the treatment notes from the Family Intervention Center. <u>See, e.g.</u>, Tr. 418 (March 20, 2015, treatment note: "Client reported that she has not experienced any depressive symptoms and that she feels she has made substantial progress in therapy.").

"The ALJ is not obligated to obtain duplicative evidence."
Lynn v. Comm'r of Soc. Sec., No. 11CV00917(CBA), 2013 WL
1334030, at *12 (E.D.N.Y. Mar. 30, 2013). Additionally, because
the record contains roughly two years of treatment notes from
the Family Intervention Center, which reflect psychiatric
examinations of plaintiff during the relevant time period, there
is no gap in the record in that regard. See Tr. 413-16, Tr. 486-
94, Tr. 498-516, Tr. 552-54.

Next, plaintiff appears to assert that the session notes
from Ms. Mesquita are significant because the ALJ used the lack
of such notes as a reason to assign reduced weight to the
medical opinion evidence. See Doc. #21 at 6, 8. This, however,
is not an accurate statement of the ALJ's findings. First, with
respect to the opinion of non-examining State agency physician
Dr. Lindsay Harvey, the ALJ assigned "little weight" to that
opinion because "[s]he opined there was insufficient evidence of
a severe mental impairment" and "did not have the opportunity to
review all available psychiatric evidence entered into the
record at the reconsideration and hearing levels." Tr. 17.
Plaintiff makes no argument as to how inclusion of Ms.
Mesquita's session notes would undermine this determination.
See Lena, 2012 WL 171305, at *9 ("To demonstrate prejudice
[plaintiff] must show that the additional medical reports would

undermine the ALJ's decision." (citation and quotation marks omitted)).

Second, with respect to the opinion of non-examining State agency physician Dr. Kelly Rogers, Ph.D., the ALJ assigned "partial weight" to that opinion, and specifically,

> less weight to her opinion the claimant had suboptimal memory, since Dr. Rogers based this opinion on the results of one consultative examination by Dr. Hillbrand. She did not have the opportunity to review all available psychiatric evidence entered into the record at the hearing level. The undersigned generally adopted her opinions limiting the claimant to performing simple work activity. Dr. Rogers considered the effect the claimant's mood disorder, preoccupation, and low frustration tolerance would have upon efficient and sustained focus, work effort and rate. She opined the claimant's mood disorder made her not ideally suited for work with the public, but she stated the claimant could interact with coworkers and supervisors so long as there was no requirement for collaboration[.]

Tr. 17 (sic). The ALJ did not assign partial weight to Dr. Rogers' opinion because of a lack of session notes from Ms. Mesquita, but rather because Dr. Rogers did not have the benefit of reviewing the entire record. Again, plaintiff makes no argument as to how inclusion of Ms. Mesquita's session notes would undermine the weight assigned to the opinion of Dr. Rogers.

Third, the ALJ also assigned "partial weight" to the opinion of consultative examiner Dr. Hillbrand. The ALJ

> gave greater weight to the results of the mental status evaluations in the reports from Family Intervention Center, which provided a longitudinal history of the

> claimant's mental functioning. Dr. Hillbrand only
> examined the claimant once and his observations of her
> severe memory problems were not fully supported by the
> claimant's statements and by the psychiatric evidence in
> the reports from her treating sources[.]

Tr. 18. Again, the inclusion of session notes from Ms. Mesquita would not necessarily undermine the ALJ's decision to assign partial weight to Dr. Hillbrand's opinion. First, the opinions of consultative examiners, such as Dr. Hillbrand, ordinarily "should be given limited weight[]" because "consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990) (citation and quotation marks omitted); see also Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) ("We have previously cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination."). The ALJ acknowledged that Dr. Hillbrand examined plaintiff just once. See Tr. 18.

Further, as previously discussed, plaintiff has failed to explain how Ms. Mesquita's session notes would differ from what is already in the record. Here, in pertinent part, the ALJ assigned "partial weight" to the opinion of Dr. Hillbrand because his "observations were not fully supported ... by the psychiatric evidence in the reports from [plaintiff's] treating sources[,]" specifically "the mental status evaluations in the

reports from Family Intervention Center[.]" Tr. 18. Accordingly, for the inclusion of Ms. Mesquita's session notes to have had an impact on the weight assigned to Dr. Hillbrand's opinion, the notes would have had to contradict the reports from the Family Intervention Center or otherwise align with Dr. Hillbrand's opinion. For reasons previously discussed, there is no reason to believe that Ms. Mesquita's session notes would differ meaningfully from the medication management notes in the record. Nevertheless, even if there were inconsistencies between those two sets of records, it would be "the function of the [ALJ] to resolve [those] evidentiary conflicts[.]" See Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). Here, there is no basis for the Court to conclude that the ALJ would credit the session notes of a social worker over the APRN's medication management notes. Accordingly, plaintiff has failed to establish how the inclusion of Ms. Mesquita's session notes would undermine, or otherwise change, the weight assigned to Dr. Hillbrand's opinion.

Finally, the ALJ assigned "little weight to the opinions of Sonia Mesquita" because "[t]he opinions contained in [her] report are inconsistent with the overall psychiatric evidence of record[,]" including "the observations of the claimant by her treating advanced practice registered nurse, ... the results of the mental status evaluations in these reports, and the

statements by the claimant of her improved mood, job seeking and work activity[.]" Tr. 18. The ALJ also noted the contradictory statements in Ms. Mesquita's MRFCQ. See id.

Again, presuming Ms. Mesquita's session notes were not duplicative of what is already in the record, they would conflict with the treatment notes of plaintiff's APRN. The inclusion of the session notes would not have necessarily changed the conclusion that Ms. Mesquita's MRFCQ was "inconsistent with the overall psychiatric evidence of record[,]" including plaintiff's self-reports. Tr. 18. Alternatively, if Ms. Mesquita's session notes were consistent with what is already in the record, the notes would have contradicted Ms. Mesquita's own opinion, which would not support an assignment of more weight to that opinion.

Nevertheless, the ALJ assigned little weight to Ms. Mesquita's MRFCQ because it conflicted with other evidence of record, not because it was unsupported by contemporaneous treatment notes. In other words, the ALJ did not use a gap in the record to discount the MRFCQ. Contra Calhoun v. Comm'r of Soc. Sec., No. 18CV06070(FPG), 2019 WL 1949743, at *4 (W.D.N.Y. May 2, 2019) (The ALJ's failure to develop the record was "particularly harmful because the ALJ discounted the opinion of nurse practitioner Jamie Allen, which was favorable to Calhoun, in part because there were minimal 2015 treatment records to

19

support the limitations she prescribed. In other words, the ALJ used a gap in the record to Calhoun's detriment." (citation and internal quotation marks omitted)). Further, the presence of Ms. Mesquita's session notes would not negate the fact that her opinion is internally inconsistent. Compare Tr. 539 ("Client has been able to cope with her depression and anxiety with the help of medication and regular therapy."), with Tr. 542-43 (noting plaintiff's "marked" limitations in certain domains of functioning).[5] Thus, plaintiff has failed to establish how the availability of Ms. Mesquita's session notes would have affected the ALJ's assessment of the opinion evidence.

Moreover, the Agency attempted on several occasions to obtain treatment records from Ms. Mesquita.

> Discharging the duty to develop the record means making every reasonable effort to obtain records from medical sources. "Every reasonable effort means that we will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination." 20 C.F.R. §416.912(b)(1)(i).

---

[5] Additionally, as the ALJ noted, Ms. Mesquita is a social worker. See Tr. 18. Accordingly, her opinion would not be entitled to controlling weight. See Martino v. Comm'r of Soc. Sec., 339 F. Supp. 3d 118, 128 (W.D.N.Y. 2018) ("[A] licensed clinical social worker is not an 'acceptable medical source'; accordingly, their opinions are not entitled to controlling weight.").

<u>Tokarski v. Comm'r of Soc. Sec.</u>, No. 18CV00459(HBS), 2019 WL 3450965, at *3 (W.D.N.Y. July 31, 2019); <u>see also</u> 20 C.F.R. §§416.912(d)(1)(i)-(ii), 404.1512(D)(1)(i)-(ii). Four separate requests for medical evidence and treatment notes from the Family Intervention Center, where Ms. Mesquita treated plaintiff, were made. <u>See</u> Tr. 90, Tr. 111 (noting requests for evidence from the Family Intervention Center had been made on April 14, 2016, April 28, 2016, September 30, 2016, and October 14, 2016). Two additional requests for records were sent directly to Ms. Mesquita on April 30, 2018, and July 17, 2018. <u>See</u> Tr. 369-74, Tr. 397-412. Those requests explicitly sought plaintiff's "[m]edical records ... from 01/01/2015 to April 30, 2018." Tr. 398; <u>see also</u> Tr. 369 (same). As previously stated, "'[e]very reasonable effort' is defined as making an initial request, followed by a follow-up request between ten and twenty days after the initial request." <u>Drake v. Comm'r of Soc. Sec.</u>, No. 15CV05604(SLI), 2018 WL 1556882, at *7 n.6 (E.D.N.Y. Mar. 29, 2018). Here, "every reasonable effort" was made to obtain plaintiff's treatment notes from Ms. Mesquita.

Accordingly, the ALJ satisfied his duty to develop the record with respect to plaintiff's session notes from Sonia Mesquita, and any error would have been harmless because plaintiff has not shown how those records would have changed the outcome of the ALJ's decision.

2. *Anger Therapy Treatment Notes*

Plaintiff next contends that "missing from the record are notes from [her] anger management therapy[.]" Doc. #21 at 6. Defendant asserts that the ALJ met his burden to develop the record by requesting and obtaining "records from the Family Intervention Center" where plaintiff underwent anger management, noting that such records in fact make up "the bulk of the administrative record." Doc. #24-1 at 14.[6]

Although plaintiff later asserts that the ALJ's RFC determination fails to account for her insubordinate behavior, see id. at 11, plaintiff makes no specific argument as to how the records from plaintiff's anger management therapy are significant. For reasons that will be discussed, the ALJ adequately accounted for plaintiff's social limitations in the RFC determination, which is supported by substantial evidence. Nevertheless, other evidence of record reflects plaintiff's social limitations, including her outbursts. See, e.g., Tr. 488 ("less anger attacks – less intense" (sic)); Tr. 490 ("c/o anger outbursts but unable to be specific or detailed" and noting

---

[6] Defendant contends that the missing treatment notes from plaintiff's anger management sessions, like the missing treatment notes from Ms. Mesquita, are not within its authority to demand from a mental health provider, pursuant to HIPAA. See Doc. #24-1 at 14. The Court does not reach defendant's HIPAA argument because plaintiff has failed to meet her burden of establishing how these records are significant.

irritable mood (sic)); Tr. 491 ("client to track 'anger'
outbursts in log" (sic)); Tr. 513 ("No physical aggression. Has
begun anger management with therapist[.] ... client frequently
provokes spouse" (sic)). Plaintiff has therefore failed to
establish how the missing records are significant, or would in
any way alter the ALJ's decision.

Additionally, four separate requests for records from the
Family Intervention Center, where plaintiff attended her anger
management sessions, were made. See Tr. 90, 109-10 (noting
requests for evidence from the Family Intervention Center had
been made on April 14, 2016, April 28, 2016, September 30, 2016,
and October 14, 2016). Therefore it appears that "every
reasonable effort" was made to obtain plaintiff's anger
management therapy notes. See Drake, 2018 WL 1556882, at *7 n.6.

Accordingly, the ALJ satisfied his duty to develop the
record with respect to plaintiff's anger management therapy
notes.

### 3. *St. Mary's Hospital Records*

Plaintiff next contends that records from St. Mary's
Hospital's psychiatric department, where plaintiff allegedly
stayed overnight in 2015, are "missing[.]" Doc. #21 at 6-7.
Defendant responds that no such records exist because the Agency
requested records from St. Mary's Hospital, but did not receive

"any record of this supposed visit, despite" receiving "other records from the relevant period[.]" Doc. #24-1 at 14.

The record contains treatment notes from St. Mary's hospital for the relevant time period, which do not reflect any psychiatric treatment. See generally Tr. 455-61 (2013 to 2015 mammography records); Tr. 462-85 (November 11, 2015, emergency department records for treatment of a dog bite). The only evidence of plaintiff's alleged stay at St. Mary's psychiatric department in 2015 is her self-report to the ALJ and consultative examiner. See Tr. 50, Tr. 496. These self-reports contradict the information set forth in the Disability Report completed by plaintiff on April 8, 2016, which states that plaintiff "stayed over 1 night" in the "Summer of 2011(not sure)" at St. Mary's Hospital for suicidal ideation. Tr. 298 (sic). Notably, none of plaintiff's mental health records, which span 2014 to 2018, make any reference to an overnight admission to the hospital for suicidal ideation.

Finally, although plaintiff notes that the records are missing, she again fails to explain how such records would be significant or how those records would alter the ALJ's decision. See Lena, 2012 WL 171305, at *9.

Accordingly, the ALJ adequately developed the record, and there is no error on that point.

B.    The RFC Determination, Generally

Plaintiff next contends that because the ALJ did not assign significant weight to any single medical opinion, the ALJ "had absolutely no opinion evidence on which to rely to formulate his decision." Doc. #21 at 7.[7] Defendant responds that the ALJ's RFC determination is consistent with the opinions of Dr. Hillbrand and Dr. Rogers, and does not need to "perfectly correspond" with a particular medical opinion of record. Doc. #24-1 at 15.

The residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." Greek v. Colvin, 802 F.3d 370, 374 n.2 (2d Cir. 2015); see also 20 C.F.R. §404.1545(a)(1). The RFC determination is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§404.1545(a)(1), (3).

Plaintiff's contention that the ALJ had "absolutely no opinion evidence on which to rely to formulate his decision" is not well-founded. Doc. #21 at 7. While the ALJ did not give great or controlling weight to any single medical opinion, he

---

[7] Plaintiff also contends, in one sentence, that the weight assigned to the opinion evidence "cannot be supported, as the ALJ essentially used the lack of medical evidence ... the justify diminished weight assignments." Doc. #21 at 8 (sic); see also id. at 6. To the extent plaintiff attempts to argue that the ALJ failed to provide good reasons for the weight assigned to the opinion evidence, she has failed to develop the argument sufficiently to permit meaningful judicial review.

25

considered underline{all} of the opinions in the record and assigned <u>each</u> opinion little or partial weight. <u>See</u> Tr. 17. Nevertheless, plaintiff maintains that "as a result of the diminished weight assignments, the ALJ was left with no reliable opinion evidence on which to base his RFC description." Doc. #21 at 7; <u>see also id.</u> at 8-9.

Some courts have held that "if an [ALJ] gives only <u>little weight</u> to <u>all</u> the medical opinions of record, the [ALJ] creates an evidentiary gap that warrants remand." <u>Waldock v. Saul</u>, No. 18CV06597(MJP), 2020 WL 1080412, at *3 (W.D.N.Y. Mar. 6, 2020) (citations omitted) (emphases added).[8] Plaintiff cites two cases in support of her position, each of which is inapposite to the circumstances here. <u>See</u> Doc. #13-1 at 15. First, in <u>Trombley v. Berryhill</u>, the ALJ assigned "little" weight to <u>each</u> of the opinions of record. <u>Trombley</u>, No. 1:17CV00131(MAT), 2019 WL 1198354, at *4 (W.D.N.Y. Mar. 14, 2019). Similarly, in <u>Kurlan v. Berryhill</u>, the ALJ "gave little or no weight to the medical opinions in the record." <u>Kurlan</u>, No. 3:18CV00062(MPS), 2019 WL 978817, at *2 (D. Conn. Feb. 28, 2019).

---

[8] The undersigned does not adopt this view, but because this case does not squarely present the question, the Court need not determine whether multiple opinions assigned "little weight" may, <u>collectively</u>, provide sufficient evidence on which an ALJ may base the RFC.

Here, by contrast, the ALJ assigned <u>partial</u> weight to two of the four opinions of record. <u>See</u> Tr. 17-18. "The fact that the ALJ gave no more than partial weight to the two opinions of record concerning Plaintiff's physical condition does not create the 'evidentiary gap' claimed by Plaintiff." <u>Dinapoli v. Berryhill</u>, No. 6:17CV06760(MAT), 2019 WL 275685, at *3 (W.D.N.Y. Jan. 22, 2019). Accordingly, the ALJ did not create an evidentiary gap with his treatment of the medical opinion evidence. <u>See</u> <u>Aurilio v. Berryhill</u>, No. 3:18CV00587(MPS), 2019 WL 4438196, at *8 (D. Conn. Sept. 16, 2019) (suggesting that assignment of "partial weight" to a medical opinion does not create an evidentiary gap warranting remand).

"Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." <u>Matta v. Astrue</u>, 508 F. App'x 53, 56 (2d Cir. 2013). That is what the ALJ did here. To reiterate, the ALJ found that plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: She could perform simple routine tasks, but not at a strict production rate pace, and could recall and execute simple routine instructions. She could make simple work-related decisions and could occasionally interact with the public and co-workers, but cannot perform tasks requiring close collaboration with co-workers or supervisors.

Tr. 15.[9]

The ALJ's findings that plaintiff could perform simple work, recall and execute simple instructions, and make simple work-related decisions are supported by both the medical opinion evidence and plaintiff's medication management notes. For example, Dr. Rogers found that plaintiff was "[n]ot significantly limited" in her ability to: (1) "understand and remember very short and simple instructions[;]" (2) "carry out very short and simple instructions[;]" and (3) "make simple work related decisions." Tr. 115-16. The ALJ "generally adopted" those findings. Tr. 17. Dr. Hillbrand opined that plaintiff's "ability to comprehend, retain, and carry out simple tasks is mildly impaired." Tr. 497. Ms. Mesquita similarly determined that plaintiff had only mild limitations in her "ability to carry out very short and simple instructions." Tr. 542. To the extent Ms. Mesquita opined that plaintiff had moderate limitations in her ability to understand and remember very short and simple instructions and make simple work-related decisions, see Tr. 542, those restrictions do not conflict with the RFC determined by the ALJ. Indeed, the MRFCQ completed by Ms.

---

[9] Plaintiff does not appear to challenge the finding that plaintiff could "perform a full range of work at all exertional levels[.]" Tr. 15. Accordingly, the Court considers only whether the RFC's non-exertional limitations are supported by substantial evidence.

Mesquita defines the term "moderate" as: "there is moderate limitation in this area but <u>the individual is still able to function satisfactorily</u>." <u>Id.</u> (emphasis added). This is consistent with case law noting that even "[m]oderate limitations in work-related functioning are not necessarily disabling." <u>Gomez v. Comm'r of Soc. Sec.</u>, No. 18CV00096(FPG), 2020 WL 1322565, at *3 (W.D.N.Y. Mar. 20, 2020).

Plaintiff's treatment records also support the RFC determination. The records of plaintiff's medication management appointments regularly reflect normal mental status examinations, including observations that plaintiff had no trouble with her memory and no difficulty understanding. <u>See, e.g.</u>, Tr. 486, Tr. 498, Tr. 500, Tr. 502, Tr. 506, Tr. 513, Tr. 515. During these visits, plaintiff's APRN noted regular improvement in plaintiff's condition, and reported that plaintiff denied experiencing depression and/or anxiety. <u>See, e.g.</u>, Tr. 486 (October 6, 2016, treatment note: "bright, talkative, began part time job at Discovery Center; ... more motivated, more energy and initiation. Spouse notes significant improvement." (sic)); Tr. 488 (July 14, 2016, treatment note: "Reports improved mood, increased motivation, improved initiation, ... no panic attacks; focused; organized[.]"); Tr. 498-99 (June 16, 2017, treatment note: "doing well; reports increased mood; brighter interactive; increased motivation and

initiation[.] ... positive response to increased Cymbalta[.]"
(sic)); Tr. 502 (January 11, 2017, treatment note: "not
depressed; minimal anxiety ... continues with motivation,
initiation, positive outlook ... enjoying activities." (sic));
Tr. 507 (August 29, 2017, treatment note: "clinically presents
bright with ongoing activity, positive motivation and
initiation" (sic)); Tr. 509 (November 8, 2017, treatment note:
"presents bright, cheerful; denies depression, denies anxiety"
(sic)); Tr. 513 (January 18, 2018, treatment note: "client
reports doing well ... working full time; denies depression,
anxious at times – using Ativan ... w/ positive effect" (sic));
Tr. 515 (April 24, 2018, treatment note: "denies depression;
complains of intermittent anxiety – using Ativan 1 to 2 times a
day as needed; reports one panic attack but was able to manage
symptoms with cognitive and behavior therapies."(sic)).

The ALJ's finding that plaintiff can "occasionally interact
with the public and co-workers, but cannot perform tasks
requiring close collaboration with co-workers or supervisors[,]"
Tr. 15, is also supported by the record, including the opinion
evidence, which generally found plaintiff to have only moderate
social limitations. See, e.g., Tr. 116 (Dr. Roger's Opinion:
"Dysphoric sometimes irritable affect will detract from her
ability to proactively engage others. She is not ideally suited
to work with the general public. She can cooperate with

30

coworkers and supervisors in the aforementioned work of moderate complexity, so long as there is no stringent requirement for collaborative interaction."); Tr. 497 (Dr. Hillbrand Opinion: plaintiff's "ability to interact appropriately with supervisors, coworkers, and the general public is moderately impaired."); Tr. 453 (Ms. Mesquita's MRFCQ: plaintiff has moderate limitations in "her ability to interact appropriately with the general public").

For the reasons stated, "there was sufficient evidence, as discussed above, including opinions from several medical sources, from which the ALJ could reach a conclusion as to the plaintiff's RFC." Marcille v. Berryhill, No. 3:17CV01620(RMS), 2018 WL 5995485, at *15 (D. Conn. Nov. 15, 2018). Accordingly, "[e]ven though the ALJ's RFC determination does not perfectly correspond with the opinions of the medical sources in the record, it is clear that it accounts for all of the evidence in, and is consistent with, the record as a whole." Rivera v. Berryhill, No. 3:17CV01726(RMS), 2018 WL 6522901, at *17 (D. Conn. Dec. 12, 2018) (citation and internal quotation marks omitted). Accordingly, there is no error.

C.   Incomplete RFC Determination

Last, plaintiff asserts that the Commissioner did not meet his burden at step five of the sequential evaluation. See Doc. #21 at 9-10. This argument, however, does not actually challenge

the ALJ's step five finding. Rather, plaintiff argues that the RFC fails to account for all of plaintiff's limitations, specifically her insubordinate behavior and "inability to maintain concentration and attendance at work." Id. at 12; see also id. at 10-13. Defendant again responds that the ALJ's RFC determination is supported by substantial evidence. See Doc. #24 at 15-16.

### 1.   Insubordination

Plaintiff contends that the ALJ failed to account for plaintiff's "anger and angry and insubordinate behavior[]" in the RFC determination. See Doc. #21 at 10-11. The Court disagrees. As previously discussed, the ALJ adequately accounted for plaintiff's moderate social limitations by limiting plaintiff to occasional interaction with the public and co-workers. See, e.g., Gomez, 2020 WL 1322565, at *3 ("The ALJ suitably translated Gomez's moderate limitation in interacting appropriately with supervisors by limiting her to occasional interaction with supervisors."); Frost v. Colvin, No. 1:14CV00965(MAT), 2017 WL 2618099, at *2 (W.D.N.Y. June 16, 2017) ("[T]he ALJ's RFC determination limited plaintiff to only occasional interaction with the public, thereby adequately accounting for her moderate limitations in social functioning."). In addition, the ALJ completely restricted plaintiff from performing tasks requiring close collaboration

with co-workers or supervisors. <u>See</u> Tr. 15. To the extent
plaintiff asserts that she is more than moderately impaired in
this domain, the opinion evidence previously discussed, and
other evidence in the record, does not support such an
assertion. <u>See, e.g.</u>, Tr. 515 (plaintiff presented as pleasant
and cooperative, with a euthymic bright mood); Tr. 513
(plaintiff presented with pleasant demeanor); Tr. 509 (plaintiff
presented as bright, cheerful, and not angry); Tr. 506
(plaintiff presented as pleasant, bright, and not angry); Tr.
502 (same); Tr. 498 (same). Accordingly, there is no error on
this point. <u>See</u> <u>Johnson v. Berryhill</u>, No. 3:16CV01050(SRU), 2017
WL 2381272, at *6 (D. Conn. Jun. 1, 2017) (rejecting plaintiff's
argument that an ALJ erred by failing to include additional
limitations in plaintiff's RFC because plaintiff did not show
that a reasonable factfinder would have to conclude otherwise).

  2.  *Off-Task Behavior and Absenteeism*

Plaintiff next contends that the ALJ erred by failing to
account for plaintiff's "inability to maintain concentration and
attendance at work." Doc. #21 at 12.

The ALJ adequately considered any limitations in
plaintiff's ability to maintain concentration by limiting her to
"simple routine tasks, but not at a strict production rate
pace[.]" Tr. 15. <u>See</u> <u>Coleman v. Comm'r Soc. Sec.</u>, 335 F. Supp.
3d 389, 401 (W.D.N.Y. Nov. 18, 2018) ("[T]he ALJ limited

33

Plaintiff to performing only work that requires sufficient attention and concentration to understand, remember and follow simple instructions. This finding is fully consistent with the observation that Plaintiff has moderate limitations in concentration, persistence, and pace." (citation and quotation marks omitted)); Bendler-Reza v. Colvin, No. 3:15CV01576(JAM), 2016 WL 5329566, at *7 (D. Conn. Sept. 22, 2016) ("As to her claim that the ALJ should have limited Plaintiff's RFC to account for inability to maintain attention, pace, persistence, and concentration, the ALJ noted that plaintiff had 'mild memory problems and mildly impaired concentration, which would limit [plaintiff] to performing simple work.' The RFC thus accounts for this limitation.").

Plaintiff next asserts the ALJ erred by failing to account for her absenteeism. See Doc. #21 at 12. Plaintiff primarily relies on Ms. Mesquita's MRFCQ in support of this assertion. See id. However, as previously noted, the ALJ assigned little weight to that opinion because the opinions contained therein "are inconsistent with the overall psychiatric evidence of record." Tr. 18. Indeed, the opinion that plaintiff is markedly limited in her "ability to complete a normal work-day and work-week, without interruptions from psychologically based symptoms[,]"

Tr. 542[10], squarely contradicts plaintiff's regular denials of depression and anxiety symptoms. <u>See</u> Tr. 502, Tr. 509, Tr. 513, Tr. 515. To the extent there is evidence supporting plaintiff's position, that is not the question to be decided. Rather, the question is whether substantial evidence supports the ALJ's decision. <u>See</u> <u>Bonet</u>, 523 F. App'x at 59. For reasons stated, the ALJ's RFC determination is supported by substantial evidence and there is no error.

**VI.**   <u>**CONCLUSION**</u>

For the reasons set forth herein, Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing [**Doc. #15**] is **DENIED**, and defendant's Motion for an Order Affirming the Commissioner's Decision [**Doc. #24**] is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 28th day of September, 2020.

```
                     /s/
           _____
           HON. SARAH A. L. MERRIAM
           UNITED STATES MAGISTRATE JUDGE
```

---

[10] Most of the other limitations in this opinion are noted to be "moderate," which indicates "the individual is still able to function satisfactorily." Tr. 542.